```
                              UNITED STATES DISTRICT COURT
                                DISTRICT OF MASSACHUSETTS
```

```
                                      )
WILLIAM RESTUCCI,                     )
                                      )
          Plaintiff,                  )
                                      )
          v.                          )   CIVIL ACTION
                                      )   NO. 09-10584-WGY
HAROLD W. CLARKE,                     )
THOMAS DICKHAULT,                     )
JANE AND JOHN DOE,                    )
                                      )
          Defendants.                 )
                                      )
```

<u>MEMORANDUM AND ORDER</u>

YOUNG, D.J.                                          November 16, 2009

**I.    INTRODUCTION**

On April 14, 2009, the plaintiff William Restucci ("Restucci"), initiated a pro se action pursuant to 42 U.S.C. § 1983 against the defendants Harold Clarke ("Clarke"), Commissioner of the Massachusetts Department of Correction (the "Department"); Thomas Dickhaut ("Dickhaut"), Superintendent of Souza Baranowski Correctional Center ("Souza Baranowski"); and unknown officers of the Department (collectively, the "Prison Officials").  Restucci has been a prisoner in the Commonwealth of Massachusetts prison system since 1996.  During his incarceration, Restucci has repeatedly refused direct orders to enter a double-bunked cell, and has received disciplinary action for his refusals.  It is likely that Restucci will be again

ordered to enter a double-bunked cell. Restucci alleges that in light of his mental health and anxiety issues, his placement in a double or multi-bunked cell would violate his First, Fourteenth, and Eighth Amendment rights. Restucci seeks an injunction preventing the Prison Officials from housing him with another inmate or ordering him to do so, as well as damages "as this Court may deem just." The Prison Officials have filed a motion to dismiss all of Restucci's claims.

For the reasons stated below, the Prison Officials' motion is allowed in part and denied in part. Restucci's First and Fourteenth Amendment claims are dismissed for failure to state a claim. Within 45 days of this memorandum and order, Restucci must produce evidence of mental health issues that would render his placement in a double-bunked cell a violation of the Eighth Amendment. If Restucci produces no such evidence within 45 days, his Eighth Amendment claim will also be dismissed.

A.   Facts

The facts are taken from Restucci's Complaint as well as Restucci's Affidavit and Exhibits, which are attached to and referenced in the Complaint. See Parker v. Hurley, 514 F.3d 87, 90, n.1 (1st Cir. 2008) (quoting Watterson v. Page, 987 F. 2d 1, 3 (1st Cir. 1993)) ("Normally, documents not included in the original pleading cannot be considered on a Rule 12(b)(6) motion without converting [it] into one for summary judgment . . . [but]

'courts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official records; for documents central to plaintiff's claim; or for documents sufficiently referred to in the complaint.'").

Restucci is serving a fifteen-to-twenty year sentence in the Massachusetts prison system.  Compl. ¶ 9.  From 1996 to 2007, Restucci was incarcerated at MCI-Norfolk, where most of his time was spent in a single-bunk cell.  Id.  In 2007, after receiving two disciplinary reports, Restucci was placed in MCI-Norfolk's segregation unit for five and a half months.  Id.  After that, Restucci was transferred to Old Colony Correctional Center ("Old Colony").  At Old Colony, Restucci refused direct orders to enter a double-bunked cell and thus received a disciplinary report. Id.; Compl., Ex. A.  In response, Restucci filed a grievance against the double-bunk cell order, which was denied and upheld on appeal.  Compl. ¶ 9.  See Compl., Exs. B, C.  Restucci then wrote a letter to the prison staff regarding his "problem," i.e., that he could not be safely housed with any other inmate.  Compl. ¶ 9.  Restucci alleges that prison officials then transferred him from Old Colony to Souza Baranowski to prevent harm to himself or another inmate.  Id.  See Compl., Ex. E; Aff. ¶ 8.

In September 2008, when Restucci became aware that Souza Baranowski was in the process of converting to double-bunked cells, he filed a grievance which was denied and upheld on

appeal.[1]  Compl. ¶ 9; Compl., Exs. F, G, H.  In the grievance, Restucci alleges that he is incompatible with any other inmate because of a "documented" problem with his "health," and that there would be a "substantial risk of serious harm to Restucci or any other inmate housed in the same cell."  Compl., Exs. F, G, H (incorporated into the Complaint at Compl. ¶ 15).  Restucci further alleges that he has "anxiety and mental health issues if . . . housed with a another inmate," as well as a sleeping disorder.  Aff. ¶¶ 6-7.  Restucci states that the anxiety he suffers would "most definately [sic] . . . amount to altercations" with a bunk-mate.  Compl., Ex. J.

Restucci thus claims that his classification to a double or multi-bunked cell violates his First, Eighth, and Fourteenth Amendment rights. Compl. ¶ 11.  Restucci alleges that in light of his mental health issues, double-bunking would subject him to inhumane conditions of confinement.  Compl., Ex. H.  Restucci also alleges that double-bunking him would place him at a substantial risk of harm.  Compl., Exs. G, H.  Finally, Restucci claims that double-bunking him is unconstitutional because it is

---

[1] Since the Complaint was filed, Restucci notified the Court in September 2009 that he was moved to segregation at MCI-Shirley Medium in June 2009 for "refusing a double-occupancy cell." Pl.'s Mot. Ord. Ment. Exam. ¶ 1.  Restucci alleges that during his time in segregation, he has been asked ten to twelve times to move into a double-bunked cell but has refused. Id.  It appears that Restucci is still at MCI-Shirley Medium for his refusal to enter a double-bunked cell.

"discriminative to his personality base [sic] on his right to keep to himself and not be harassed by another cell occupant," Compl. ¶ 12, and "violates [his] . . . freedom to express [his] personality," Aff. ¶ 8.

As a remedy for these alleged constitutional violations, Restucci seeks an injunction preventing the Prison Officials from ordering him to enter a double-bunked cell, as well as unspecified damages.  Compl. ¶¶ 17, 20.

**II. ANALYSIS**

   A.   Motion to Dismiss Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Morales-Tañon v. Puerto Rico Elec. Power Auth., 524 F.3d 15, 18 (1st Cir. 2008) (citing Twombly, 500 U.S. at 555).  A pro se plaintiff's pleadings are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972).  A court, however, will not "conjure up unpled allegations" to establish jurisdiction or to state an actionable claim. McDonald v. Hall, 610 F.2d 16, 19 (1st Cir. 1979).  Pro se plaintiffs must still

comply with procedural and substantive rules of law.  Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).

For the purposes of this motion to dismiss, the Court will take into account the allegations in the Complaint, as well the Exhibits and Affidavit attached to and referenced in the Complaint.  See Parker, 514 F.3d at 90, n.1 (noting that in a motion to dismiss under 12(b)(6), courts may consider documents whose authenticity is not disputed; official records; documents central to the plaintiff's claim; and documents sufficiently referenced in the complaint).  These Exhibits include Restucci's numerous grievances to the Department regarding his refusal to enter a double-bunked cell and correspondence from prison staff.

    B.    Eighth Amendment Claim

The Eighth Amendment's prohibition of "cruel and unusual punishments" applies to "the treatment a prisoner receives in prison and the conditions under which he is confined."  Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Helling v. McKinney, 509 U.S. 25, 31 (1993)).  The Eighth Amendment applies to state action through the Fourteenth Amendment.  See Robinson v. California, 370 U.S. 660 (1962).  Thus, prison officials must ensure that the conditions of confinement, in and of themselves, do not impose an "unnecessary or wanton infliction of pain."  Rhodes v. Chapman, 452 U.S. 337, 347 (1981) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)).  "[A] court considering an

Eighth Amendment challenge to conditions of confinement must examine the totality of the circumstances," including physical plant, sanitation, safety, inmate needs and services, and staffing.  Id. at 363-64.  The "touchstone" of this analysis is "the effect upon the imprisoned."  Id. at 364.  Prison officials, therefore, have a duty to ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take "reasonable measures to guarantee the safety of the inmates." Giroux v. Somerset County, 178 F.3d 28, 30 (1st Cir. 1998) (citing Farmer, 511 U.S. at 832).

    Not every deprivation, however, gives rise to an Eighth Amendment claim.  A prison-conditions complaint states a violation of the Eighth Amendment only when two requirements are met.  First, the alleged deprivation of adequate conditions must be objectively serious, that is, the conditions of confinement must have deprived the plaintiff of "the minimal civilized measure of life's necessities."  Rhodes, 452 U.S. at 347. See, e.g., Farmer, 511 U.S. at 833-34 (holding that deliberate indifference to a prisoner's substantial risk of serious harm at the hands of other inmates is unconstitutional); Hutto v. Finney, 437 U.S. 678, 687 (1978) (holding that prolonged isolation in overcrowded, violent conditions without adequate food is unconstitutional); Estelle v. Gamble, 429 U.S. 97, 103 (1976)

(holding that deprivation of necessary medical treatment is unconstitutional).

Second, the plaintiff must allege that the official involved acted with "a sufficiently culpable state of mind," namely, a "deliberate indifference." Giroux, 178 F.3d at 32 (citing Farmer, 511 U.S. at 834). In defining "deliberate indifference," the Supreme Court has held that a "prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. Thus, this standard requires an actual, subjective appreciation of risk, and has been likened to the standard for determining criminal recklessness. Giroux, 178 F.3d at 32 (citing Farmer, 511 U.S. at 839-40).

Restucci alleges that placing him in a double-bunked cell in light of his mental health issues would violate the Eighth Amendment. See Compl. ¶ 11; Aff. ¶¶ 6-7. The Court notes that at this time, Restucci has not been placed in a double-bunked cell because of his refusals in the face of direct orders from prison officials. Prison officials, however, have punished Restucci for refusing to enter a double-bunked cell. Compl. ¶ 9; Pl.'s Mot. Ord. Ment. Exam. ¶ 1. Moreover, there appears to be a good chance that Restucci will be again asked to enter a double-bunked cell if he returns to Souza Baranowski as the facility has instituted a general policy of double-bunking, or at another

facility as Restucci has been repeatedly ordered to enter a double-bunked cell throughout his incarceration.  See Compl. ¶ 9; Compl., Ex. K; Pl.'s Mot. Ord. Ment. Exam. ¶ 1.  Therefore, the Court will consider Restucci's Eighth Amendment claim.  See Farmer, 511 U.S. at 845 (quoting Pennsylvania v. West Virginia, 262 U.S. 553, 593 (1923)) ("[o]ne does not have to await the consummation of threatened injury to obtain preventive relief.")

Assuming the facts alleged as true and drawing all reasonable inferences in favor of Restucci, there are, albeit barely, sufficient allegations to state an Eighth Amendment claim.  First, Restucci claims an objectively serious deprivation with respect to his health and safety.  Restucci alleges that he has "anxiety and mental health issues if [he is] housed with another inmate" and that he has a "sleeping disorder."  Aff. ¶ 6-7.  In his Classification Appeal, Restucci states that he has refused double-bunking because the anxiety he would suffer if housed with another inmate would "most definately [sic] . . . amount to altercations."  Compl., Ex. J.  Restucci also alleges that being placed in a double-bunked cell would "produce violence for [him]."  Aff. ¶ 3.  Restucci further states that the Prison Officials moved him from Old Colony to Souza Baranowski because of his mental health problem.  Id. at ¶ 8.  Assuming that Restucci does have particular mental health issues that may compromise his mental health and safety in a double-bunked cell,

housing Restucci with another inmate would impose a sufficiently serious deprivation to constitute an "unnecessary and wanton infliction of pain." See Rhodes, 452 U.S. at 364 (quoting Laaman v. Helgemoe, 437 F. Supp. 269, 323 (D.N.H. 1977)) ("When 'the cumulative impact of the conditions of incarceration threatens the physical, mental, and emotional health and well-being of the inmates and/or creates a probability of recidivism and future incarceration,' the court must conclude that the conditions violate the Constitution."); Gamble, 429 U.S. at 103 ("[D]enial of medical care may result in pain and suffering which no one suggests would serve any penological purpose . . . infliction of such unnecessary suffering is inconsistent with contemporary standards of decency.")

Second, with respect to the element of "deliberate indifference," there are again, albeit barely, sufficient allegations to survive a motion to dismiss. Restucci alleges that he has made numerous grievances and complaints to the Department regarding his health and safety issues with double-bunking. See Compl. ¶¶ 9, 15; Compl., Exs. B, C, F, G, H, I, J. Restucci alleges in the Inmate Grievance Form, dated September 30, 2008, that Department's officers acted with "deliberate indifference" in failing to attend to "Restuccis [sic] serious medical needs." Compl., Ex. H. Moreover, the Supreme Court has held that "[w]hether a prison official had the requisite

knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." Giroux, 178 F.3d at 32 (citing Farmer, 511 U.S. at 842).  The Court can infer that at least some Prison Officials had actual knowledge of Restucci's mental health issues from Restucci's allegation that he was moved out of Old Colony because of his very "problem" with double-bunking, Compl. ¶ 9; Aff. ¶ 8.  Further, the Court can infer that Dickhault had knowledge of Restucci's issues as Dickhault signed off on a rejection of Restucci's appeal regarding his refusal to enter a double-bunked cell.  Compl., Ex. I.  Despite this knowledge, the Prison Officials have allegedly repeatedly ordered Restucci to enter a double-bunked cell.  Therefore, in light of Restucci's allegations and his constant complaints to the Department referencing his mental health issues, Restucci has made sufficient allegations regarding deliberate indifference.

Because Restucci's allegations regarding a serious deprivation of health and safety are barely sufficient, however, Restucci is required, within 45 days of the date of this memorandum and order, to produce some evidence of a mental health issue that would make double-bunking him "cruel and unusual punishment."  Otherwise, Restucci's Eighth Amendment claim will be dismissed.

C.  Fourteenth Amendment Claim

1.  Procedural Due Process

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV.  Thus, a procedural due process claim against the government requires proof of inadequate procedures and an interference with a liberty or property interest.  Kentucky Dept. of Corr. v. Thompson, 490 U.S. 454, 460 (1989).  The liberty interests of prisoners are limited to "freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995) (holding that thirty days in solitary confinement did not deprive an inmate of a liberty interest because disciplinary segregation mirrored those conditions imposed upon inmates in discretionary segregation, which was an incident of ordinary prison life).  Moreover, an inmate's subjective expectations are not dispositive of the liberty-interest analysis.  Dominique v. Weld, 73 F.3d 1156, 1160 (1st Cir. 1996) (holding that removal of inmate's work release status did not deprive him of a liberty interest despite the "considerable difference between the freedoms" the inmate enjoyed on work release and the conditions of incarceration).

Restucci appears to allege that placing him in a double or multi-bunked cell violates his Fourteenth Amendment right to due process. There is, however, no constitutionally protected right to a single-cell. See Bell v. Wolfish, 441 U.S. 520, 542 (1979) (holding that there is no "'one man, one cell' principle lurking in the Due Process Clause" in the context of assessing the rights of a pretrial detainee); Rhodes, 452 U.S. at 347 (holding that double-bunking inmates is not per se unconstitutional). Moreover, as appears from Restucci's complaint, double-bunking is an ordinary incident of prison life at Old Colony and Souza Baranowski. See Compl. ¶ 9. Any subjective feelings of deprivation that Restucci may experience when moving from a single-bunk cell to a double-bunked cell are not dispositive. See Dominique, 73 F.3d at 1160. Therefore, Restucci fails to state a due process claim.

### 2. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). When a non-suspect classification is involved, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a state purpose. Village of Willowbrook v. Olech, 528 U.S. 562, 564

(2000). Restucci alleges that his classification to a double or multi-bunked cell "wherever it may be is discriminative to his personality base [sic] on his right to keep to himself and not be harassed by another cell occupant." Compl. ¶ 12. There is no authority stating that personality type is a suspect class or that single-bunk cell status is a fundamental right for the purposes of equal protection. Thus, rational basis analysis applies and the classification will be upheld if there is any conceivable rational basis to support it. Beauchamp v. Murphy, 37 F.3d 700, 707 ("[A] non-suspect classification is unconstitutional only if no legitimate basis can be imagined to support it.").

Here, Restucci makes no allegation that other inmates similarly situated to him were not ordered to be double-bunked. Moreover, there is no suggestion in the Complaint that the process by which the prison decided which inmates would be double-bunked was discriminatory, or that there was no rational basis for any difference in treatment. Restucci only explains that since he "[does] not have the personality nor the patience to put up with a state prisoner," double-bunking violates his Fourteenth Amendment rights. Aff. ¶ 8. These allegations are insufficient to state an equal protection claim.

D.   First Amendment Claim

During incarceration, an inmate does not lose all protections of the First Amendment, but retains "those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  Pell v. Procunier, 417 U.S. 817, 822 (1974).  The complaint appears to allege that classification of Restucci to a double-bunked cell infringes on his "right to keep to himself," Compl. ¶ 12, and his "freedom to express [his] personality," Aff. ¶ 8.  As the Prison Officials correctly point out, to the extent that Restucci claims a First Amendment right of "disassociation" – the right to be left alone in prison – there is no authority that confers such a right upon prisoners.  Restucci also fails to explain how being bunked with another inmate would infringe upon his right to express himself.

A purported First Amendment right to keep to oneself in prison and thus refuse double-bunked cells cannot stand, as it would interfere with the legitimate policies and penological objectives of the prison system.  See Pell, 417 U.S. at 822 ("[C]hallenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system.").  Maintaining security, order, and discipline are all essential correctional goals.  Bell, 441 U.S. at 546-47.  Moreover, because

"the problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions . . . [p]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order . . . and to maintain institutional security." Id. at 547.  A right to be left alone in a single-bunk cell would surely interfere with prison officials' discretion to maintain administrative order and make room for more inmates.  Therefore, Restucci fails to state a First Amendment claim.

    E.    Damages

        1.    Prisoner Litigation Reform Act

The Prison Officials argue that Restucci's claims must be dismissed because he fails to plead a physical injury.  Defs.' Mot. Dis. at 10.  The Prisoner Litigation Reform Act ("PLRA") bars a prisoner's action for compensatory damages based on mental or emotional injuries suffered in custody, absent a showing of "physical injury."  42 U.S.C. § 1997e(e).  See Quinone-Pagan v. Administracion de Correcion, 2009 WL 2058668, *5 (D.P.R. 2009); McGoldrick v. Farrington, 462 F. Supp. 2d 112, 113 (D. Me. 2006). The First Circuit has yet to rule on the application of 42 U.S.C. § 1997e(e), but other circuits have held that prisoners' lawsuits for mental or emotional injuries fail when sufficient physical injury is not alleged.  See, e.g., Mitchell v. Horn, 318 F.3d

523, 533 (3d Cir. 2003); Oliver v. Keller, 289 F.3d 623, 629 (9th Cir. 2002); Harris v. Garner, 190 F.3d 1279, 1287 (11th Cir. 1999), rev'd en banc in part on other grounds, 216 F.3d 970 (11th Cir. 2000); Siglar v. Hightower, 112 F.3d 191, 193-94 (5th Cir. 1997).

Here, Restucci fails to allege any physical injury in the Complaint or in the documents attached to and referenced in the Complaint.  Therefore, Restucci may not recover any compensatory damages that may be based on mental or emotional injuries.  This provision of the PLRA, however, does not affect Restucci's recovery of injunctive relief.

### 2. Qualified Immunity

The Prison Officials also argue that Restucci's claim for damages is barred by the Prison Officials' qualified immunity.  The Court notes that in light of the PLRA, Restucci is limited only to the recovery of punitive damages if he succeeds on his Eighth Amendment claim.  At this time, the Court expresses no opinion as to the Prison Officials' claim of qualified immunity.

**III. CONCLUSION**

Accordingly, the Prison Officials' motion to dismiss is ALLOWED in part and DENIED in part.  The Prison Officials' motion as to Restucci's First and Fourteenth Amendment claims is allowed.  Restucci will have 45 days from this memorandum and order to produce evidence of mental illness that would preclude his placement in a double-bunked cell.  If Restucci is unable to provide such evidence within 45 days, then his Eighth Amendment claim will also be dismissed, and the Prison Officials' motion to dismiss will be allowed in its entirety.

SO ORDERED.

/s/ William G. Young

WILLIAM G. YOUNG
DISTRICT JUDGE